HIRAM G. LOOMIS vs. BENJAMIN A. BOURN.

Hartford Dist., Oct. T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, JS.

The charter of the city of Hartford enacted in 1859 provides in section 11 that the City Court of said city "shall continue to have cognizance of the causes of which it now has jurisdiction by virtue of the original charter of said city, and of subsequent amendments thereof; and its jurisdiction is hereby declared to embrace all causes either in law or equity, whenever the cause shall arise or have arisen within the limits of said city, or concerns land within said limits, and one or both parties live within the same."

Held, that under said section the City Court of said city has original jurisdiction in actions at law where the matter in demand is less than one hundred dollars and consequently is also within the jurisdiction of justices of the peace. Held also, that general statutes enacted since 1859 wherein it is provided in substance that causes in which the matter in demand is of a specified sum "shall be heard and determined by a justice of the peace," did not repeal the special provisions in city charters relating to the jurisdiction of city courts.

[Argued October 11th—decided December 13th, 1893.]

ACTION to recover for services alleged to have been rendered by the plaintiff as a civil engineer, brought to the City Court of the city of Hartford and tried to the court, McMANUS, J. The defendant pleaded in abatement, because the amount of damages demanded in the complaint, twenty-five dollars, was not within the jurisdiction of the court. To this plea, the plaintiff demurred; the court overruled the demurrer and sustained the plea and the plaintiff appealed.

*Roger Welles* and *Sidney E. Clarke*, for the appellant (plaintiff).

*James P. Andrews*, for the appellee (defendant).

TORRANCE, J. The appeal in this case presents but one question, and that is, whether the city court of Hartford has original jurisdiction in actions at law, like the one at the bar, where the matter in demand is within the jurisdiction of a justice of the peace. The answer to this question depends upon the construction put upon the charter of the city of Hartford.

Both parties agree that such jurisdiction was not given in the original charter of 1784, but the plaintiff claims that it was given by that part of section 11 of the charter of 1859, so called, which is here quoted:—" A city court shall continue to be holden in said city * * * and shall continue to have cognizance of the cases of which it now has jurisdiction by virtue of the original charter of said city and of subsequent amendments thereof ; and its jurisdiction is hereby declared to embrace all cases, either at law or in equity, whenever the cause of action shall arise or have arisen within the limits of said city, or concerns land within said limits, and one or both parties live within the same ; and any suit or action that may be commenced in favor of any bank located in said city upon any writing obligatory payable by the terms of it at said bank or indorsed to said bank." 5 Private Laws, 324, § 11.

By the word " jurisdiction," as here used in both of these

clauses, we think original and not appellate jurisdiction was intended, for the appellate jurisdiction is expressly provided for subsequently in section 13 of the charter ; and this word " jurisdiction," when applied in the second clause to equity suits and to actions concerning land, and upon writings obligatory, could not well bear any other meaning.

As before stated, the city court did not possess the jurisdiction in question prior to 1859. If it now has it, it is by virtue of the section quoted. Now the manner in which the jurisdiction of the city court is limited and defined in that section is somewhat peculiar. Apparently the section begins by giving or continuing to the city court the limited jurisdiction which it then had, and ends, in the second clause, by giving it a jurisdiction unlimited, at least so far as the amount or value of the matter in demand is concerned. If, therefore, we read this section just as it stands, and without reference to prior legislation touching the jurisdiction of the city court, it may well be asked whether the legislature would in one and the same section begin by giving a limited jurisdiction if it meant to end by giving an unlimited one. If, however, the section is read as it should be, in connection with this prior legislation, the objection implied in the above question will, we think, lose much of its force, and the peculiarity alluded to will be explained or accounted for. To thus read the section necessitates a brief statement of this prior legislation.

The original charter passed in 1784, providing for the establishment of the city court, limited and defined its jurisdiction as follows :—" And shall have cognizance of all civil causes wherein the title of land is not concerned, by law cognizable by the county courts in this state ; provided the cause of action arise within the limits of said city, and one or both of the parties live within the limits of said city ; and said city court shall, as to the causes by them cognizable, to all intents and purposes have the same powers and authorities * * * as said county courts now, or hereafter, by law shall have. And an appeal shall be allowed to either party from the judgment or determination of said city courts to the next Superior

Court to be holden in the county of Hartford in all causes in which an appeal is now or hereafter by law shall be allowed from the said county courts." 1 Private Laws, 370, § 8.

Under this charter the city court had no original jurisdiction of causes which from the amount of their demand were within the jurisdiction of a justice of the peace, because the county court had no such original jurisdiction. Revision of 1808, p. 34, § 7, and p. 37, § 14. By subsequent acts and amendments, however, the jurisdiction of the city court was enlarged and extended from time to time. Thus in 1801 and 1817 it was given jurisdiction of suits by any bank in the city upon any "writing obligatory," without reference to the amount, made payable at or indorsed to such bank. 1 Private Laws, 462 and 466. In 1815, and again in 1835, it was given original jurisdiction in certain actions of debt for penalties and forfeitures under city by-laws, without reference to the amount. In 1853 it was provided that its equity jurisdiction should "extend to all cases wherein the cause of action arises within the limits of said city or wherein either party to the suit shall be resident of said city." And furthermore that said city court should have "jurisdiction of all actions of trespass and ejectment wherein the cause of action shall arise within the limits of said city." 3 Private Laws, 96, § 7. So much of this law of 1853 as related to the equity jurisdiction was repealed in 1855, (Pub. Acts of 1855, p. 23), but this did not affect its jurisdiction over trespass cases, however small the demand might be. In 1853 also power was given to the city court to set aside the doings of the common council in the matter of certain assessments and to appoint a committee to reassess and to report to it for its final approval. 3 Private Laws, 395. In 1856 the equity jurisdiction was again defined as follows :—" Shall have jurisdiction of all suits in equity, except for relief against any judgment rendered or cause depending in the Superior Court," provided certain other enumerated jurisdictional facts existed. 3 Private Laws, 398. In 1857 it was provided that certain penalties and forfeitures might be recovered by an action of debt before the city court. 4 Private Laws, 67.

It thus appears that, prior to the alteration or amendment of the charter made in 1859, the legislature had enlarged the original jurisdiction of the city court as defined in the charter of 1784, so as to include, among other matters, causes of action that were clearly within the jurisdiction of justices of the peace. But in addition to these changes thus made by the amendments to the charter itself prior to 1859, it should also be noted that, at the time the section under consideration was enacted, the law relating to county courts by reference to which the jurisdiction and law of procedure of the city court was in the original charter in large measure defined, had been repealed. The act of 1855, discontinuing the county courts, expressly provided that when the act should take effect " the present county courts shall cease to exist and all laws for the appointment and holding of said courts shall be of no further force and the same are hereby repealed." Pub. Acts of 1855, chap. 26, § 17. By chapter 28 of the public acts of 1855 it was expressly provided that the powers and jurisdictions of the several city courts should not be affected by any provisions of the act abolishing county courts, but that " all powers conferred and duties imposed upon said courts * * * shall be construed in the same manner as if the county courts had not been discontinued."

This then was the condition of things at the time the charter of 1859 was passed: The law relating to county courts had been repealed four years previously, and the jurisdiction of the city court, so far as it depended upon that law, would thereafter have to be ascertained by reference to a repealed law. This would be a growing inconvenience as time went on. The jurisdiction as defined by the charter itself could be ascertained only by a reference to amendments scattered through the public and private laws. Furthermore, the city court then already had original jurisdiction in many cases of causes within the jurisdiction of justices of the peace.

It is quite reasonable to suppose that the legislature had this condition of things in view when it passed the charter of 1859, calling it an " act to alter the charter of the city of

Hartford and to combine sundry public acts relating thereto." If so, we should expect that it would try to define the jurisdiction of the city court in the charter itself, so as to avoid as much as possible all reference to the repealed county court law; and this we find it did do. No express reference is made to the repealed county court law in the new charter. The jurisdiction which is "continued" is the jurisdiction which it has under the original charter and its amendments.

Now all the amendments, so far as we are aware, contain in themselves, without reference to any outside law, a definition of such jurisdiction in the cases to which they apply. It is only with regard to the jurisdiction under the original charter that any reference would have to be made to the repealed county court law. The jurisdiction is further declared in express terms to extend to "all cases in law or in equity," without reference to amount. In the matter of appeal from the city court to the Superior Court, the charter itself, without reference to any other law, limits and defines the right and provides how and in what manner it shall be exercised. All this is in marked contrast with the charter of 1784, and clearly shows an intent to define the jurisdiction of the city court as far as possible in the charter itself and by express provisions.

We also think the legislature meant to enlarge the original jurisdiction of the court, so as to include cases like the one at bar. It already had original jurisdiction over many classes of cases within the jurisdiction of a justice of the peace, and that jurisdiction was to continue. There existed no good reason why it should not have jurisdiction over all such cases concurrently with such justices, if the legislature saw fit to grant the power. The legislature under these circumstances said in express terms "its jurisdiction is hereby declared to embrace all cases at law or in equity," etc. This language is broad enough and plain enough to include cases like the one at bar, and we see no good reason why it should not have its full force and effect.

But in opposition to this view the defendant urges some objections which may now be considered. The first arises

out of the peculiarity of the manner in which the jurisdiction is defined, to which allusion was made before. But this objection loses nearly all its force if we take into account, as we should, all the circumstances to which allusion has been made, under which the charter of 1859 was passed. When this is done we can explain, if we cannot justify or excuse, the peculiar manner in which the jurisdiction is defined. He further says that it is hardly to be supposed that the legislature intended to confer original and appellate jurisdiction over the same class of cases, and that a result so novel, if not absurd, should be avoided if possible. The force of this objection lies in the assumption that such a result would be either novel or absurd. If the legislature had never before brought about just such a result the objection would have great weight; but if it has done so, and that repeatedly, the objection falls. It is done, as we have seen, in this very charter of 1859, for in certain circumstances the court is given original and appellate jurisdiction over the same class of cases. Jurisdiction original and appellate over the same class of cases was given to the Superior Court in 1838. Compilation of 1854, p. 73. It was given to it again in 1854. Compilation of 1854, p. 75. These instances (and others might be cited) are enough to show that the assumption on which the present objection is based has no foundation.

It further urged that the construction we have put upon the charter gives the city court equity jurisdiction over the judgments and proceedings of the Superior Court. In the light of the previous legislation upon the equity jurisdiction of the city court, and in view of the settled policy of the legislature to refrain from giving the power in question to inferior courts, such a construction as the defendant here claims cannot fairly be given, and ought not to be given, to the eleventh section of the charter of 1859.

Finally, it is said that if the charter of 1859 did confer jurisdiction as claimed by the plaintiff, subsequent legislation has taken it away. In support of this claim we are referred to the general laws subsequently passed, which provide in substance that all causes wherein the matter in demand is

of a specified amount "shall be heard and determined by a justice of the peace," and which repeal all acts and parts of acts inconsistent therewith.   The question is, did the legislature in the general laws referred to intend to repeal or change the provisions contained in city charters relating to the jurisdiction of city courts.   We think it did not.   The provisions found in the revisions of 1866, 1875 and 1888, to the effect that the jurisdiction of city courts should not be affected by the general legislation referred to in such provisions, indicate very clearly an intent to preserve and secure to the city courts, unchanged by any mere general law, the jurisdiction conferred upon them by the charter.   Revision of 1866, p. 245, § 142;  Revision of 1875, p. 413, § 18;  Revision of 1888, § 709.   For these reasons we think there was error in the judgment of the city court, and said judgment is reversed.

In this opinion FENN and BALDWIN, Js., concurred; ANDREWS, C. J., and CARPENTER, J., dissented.